# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MARY BUCKSBAUM SCANLAN, )
)
       Plaintiff, )
)
v. ) No. 09 C 5026
)
MARSHALL EISENBERG; EARL )
MELAMED; NEAL, GERBER & )
EISENBERG LLP, an Illinois )
limited liability partnership; )
and GENERAL TRUST COMPANY, a South )
Dakota corporation, )
)
)
       Defendants. )

## MEMORANDUM OPINION

Mary Bucksbaum Scanlan ("Mary"), the original plaintiff in this diversity case, is the daughter of Martin Bucksbaum, who, along with his brother, Matthew Bucksbaum, founded General Growth Properties, Inc. ("General Growth"), "one of the largest publicly traded real estate investment trusts in the United States." (Am. Compl. ¶ 2.) Martin established a series of trusts in which Mary is the life beneficiary entitled to receive such distributions as the trustee in its "sole, absolute discretion" deems necessary for her "support" or deems to be in her "best interests." Mary's uncle Matthew established similar trusts for his children and their descendants.

The trust instruments were allegedly drafted by the attorney defendants in this case, Marshall Eisenberg, Earl Melamed, and their law firm, Neal, Gerber & Eisenberg. These attorneys also represented the Bucksbaum brothers in the founding and management of General Growth and its various affiliates.

The original trustees of the trusts were eventually replaced by the defendant General Trust Company (the "Trust Company"), a corporation formed and largely owned by the defendant Eisenberg. He and the defendant Melamed allegedly control the Trust Company.

Mary alleges that Eisenberg, Melamed and the law firm have represented her as her attorneys in all of her legal affairs, including all matters involving her trusts. They also represent the other Bucksbaum family members in regard to their trusts and other financial affairs, as well as General Growth and the Trust Company. Both Eisenberg and Melamed own substantial amounts of stock in General Growth.

Martin Bucksbaum died in June of 1995. At that time, Mary's uncle Matthew and his son, John, took over the operation of General Growth. Mary has never had any role in the operation of General Growth.

As of the end of 2002, approximately 65 percent of the assets of Mary's trusts consisted of General Growth stock. (Am. Compl. ¶ 71.) By 2006, the Trust Company had caused Mary's trust to make additional purchases that brought that percentage to 69 percent.

During 2007 and 2008, the price of General Growth stock fell dramatically, to a point where by the end of 2008 it was selling for less than $2.00 per share. The complaint alleges that despite this, and without Mary's knowledge, the defendant attorneys, the law firm and the Trust Company, acting at the behest of Eisenberg and Melamed, caused Mary's trusts to purchase more than $300 million in additional shares of General Growth stock in 2007 and 2008. This was explained in a Trust Company policy statement as being an effort to shore up the value of the stock in accordance with what the Trust Company deemed to be the best interest of the "Bucksbaum Family" as a whole.

In addition to causing these additional purchases of General Growth stock during the period of its declining price, the complaint alleges that without Mary's knowledge, Eisenberg, Melamed and the Trust Company "caused assets owned by Mary's Trusts to be used to make personal unsecured loans totaling at least $90 million to two officers of General Growth for the purpose of allowing those officers to meet margin calls associated with their holdings of General Growth stock." (Am. Compl. ¶ 16.)

\* \* \* \*

Mary's original complaint in this case was in four counts, alleging that as a result of these transactions and others, the attorney defendants and the law firm were guilty of legal malpractice in their representation of Mary as well as breaches of

their fiduciary duties to her. She alleged that the defendant Trust Company was guilty of breaches of trust and was responsible to restore hundreds of millions of dollars to the corpus of her trusts. The complaint also sought removal of the Trust Company as trustee.

The defendants' reaction to the original complaint was to file Rule 12(b)(6) motions to dismiss various counts on the basis that they failed to state claims upon which relief could be granted. The motions were briefed, and we heard extensive oral argument. During the arguments we raised the question of whether the facts alleged in the complaint showed that Mary had sustained the kind of injury in fact required by Article III of the Constitution. See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). We asked whether the complaint had alleged facts showing a likelihood that the corpus of the trusts would ever be insufficient to pay all of the discretionary distributions to which Mary might become entitled during her lifetime.[1]

Counsel for Mary did not agree that the complaint failed to establish Article III standing, but nonetheless requested leave to

---

[1] Our point was not merely that the payments were discretionary; discretionary or not, should payments become necessary for Mary's adequate support and best interests, the trustee would have a good-faith obligation to make appropriate payments, and the defendants do not question this. The point, rather, is that there was nothing alleged in the complaint to indicate that such a necessity would ever occur. It appeared that Mary had significant assets apart from her interest in the trusts, Am. Compl. ¶ 38, but there was no indication in the complaint as to the amount of these assets or the amount of Mary's income.

file an amended complaint. We granted leave and gave the defendants time to file motions pursuant to Rule 12(b)(1), challenging Mary's Article III standing to sue. In granting leave to file the amended complaint, we suggested that Mary should allege facts indicating that the corpus of her trusts "has been reduced to an amount that is reasonably likely to be insufficient to fund the remaining support and best interest payments to which she will become entitled during the remainder of her life." (Order of June 9, 2010 at 2.) We went further and suggested the kinds of facts that would be relevant to establish injury in fact:

> Allegations as to the dollar value of the assets remaining in the trust at the present time, the amounts of the periodic payments plaintiff has received from the trust in the past (and accepted without objection) and her present age and health (bearing on her life expectancy) would be relevant. An allegation as to the plaintiff's assets and other sources of income (bearing upon her probable need for future payments from the trust) should also be helpful.

(Id.)

\*   \*   \*   \*

The amended complaint was filed, and now pending before the court are the fully-briefed Rule 12(b)(1) motions of the defendants to dismiss for lack of Article III standing.

The amended complaint does allege Mary's age.[2] But none of the other kinds of allegations we suggested are included — nothing about the value of Mary's non-trust assets nor her other sources of income, and nothing about the amounts of any discretionary payments she has received from the trusts over the years. As far as the issue of injury in fact to Mary is concerned, the amended complaint is the same as the original complaint. We note from the defendant Trust Company's motion to dismiss that the present corpus of Mary's trusts is almost $1 billion. No facts alleged in the amended complaint would establish that this could be an insufficient sum to fund all of the discretionary payments Mary might become entitled to during the remainder of her lifetime.

In her opposition to the defendants' Rule 12(b)(1) motions, Mary argues that her interest in the trusts is not limited to the discretionary income payments but extends to the entire corpus. She contends that, in the discretion of the trustee, she can receive <u>all</u> of the corpus of her trusts by way of periodic payments, to the exclusion of the remaindermen. (Pl.'s Resp. at 7.) Thus, "[b]ecause GTC <u>can</u> distribute the Trusts' assets to Mary or accumulate them for her children, Mary and her children <u>all</u> have standing to sue GTC for breach of trust." (<u>Id.</u> at 7-8 (emphasis added).) She emphasizes that "it is the <u>possibility</u> that the

---

[2] Paragraph 2 alleges that she was born in 1969, so her present age would be approximately forty.

beneficiary <u>may</u> receive a distribution that gives them standing to bring suit." (<u>Id.</u> at 9.)

We have two problems with this argument. First, as far as payments for "support" are concerned, the argument ignores the specific requirement of the trust instruments that distributions to Mary be those the trustee deems to be "necessary" for her support. (Ex. A-1 to Decl. of Frank J. Favia, Jr., vol. 1, at 2.) If the trustee were to distribute more than it deemed in good faith to be "necessary" for Mary's support (to the detriment of the remaindermen), it would be a breach of the trust. The language of the trust instruments is different as to "best interests" payments. The word "necessary" is not used; the trustee is authorized to make payments in amounts "the Trustee deems to be in [her] best interests." <u>Id.</u> The omission of the word "necessary" may imply that the trustee can be more relaxed in making "best interests" payments than in making "support" payments, enlarging the distributions to allow expenditures not strictly necessary for Mary's "support." But the payments will still be limited to those the trustee "deems" in good faith to be in Mary's best interests, and that does not imply any authority to distribute money in order to enable Mary to make frivolous expenditures. Neither does it imply any authority to disregard the assets and income Mary may have apart from the income and corpus of the trusts.

Secondly, nothing is pleaded in the complaint to indicate that the near-$1 billion corpus of the trusts could ever be insufficient to fund whatever "support" and "best interests" payments the trustee might see fit to make.

Mary argues that the defendants have cited no authority that would support dismissal. But the court regards the case of Harley v. Minnesota Mining & Manufacturing Co., 284 F.3d 901, 905-08 (8th Cir. 2002), cited by the defendants, as strong support for the their position. The plaintiffs in that case were beneficiaries of an ERISA plan, rather than a trust, but the reasoning of the Court on the standing issue was the same as we believe to be applicable here. Other relevant cases cited by the defendants are Skinner v. Union Planters National Bank of Memphis, 448 F. Supp. 726, 730 (W.D. Tenn. 1978) and Morse v. Bank One, No. Civ. A. 03-2638, 2005 WL 3541037, at *7-9 (E.D. La. Nov. 1, 2005).

Aside from case authority, the very words "injury in fact" obviously have some meaning. To hold that Mary has standing based on her "possibility" theory would be to deprive the words of any meaning at all.

Mary regards the failure of the defendants to raise the standing issue on their own as an indication that she does have standing. But who raises the standing issue is of no consequence. Whether the defendants raise it or not, the court has a duty to inquire into its own jurisdiction, which is what has happened here.

We are satisfied that the amended complaint fails to allege facts that would establish Article III standing on the part of Mary Buscksbaum Scanlan. She is a plaintiff in each of the eight counts, and the injury-in-fact requirement applies to each of them. Therefore, we will grant the motions of the defendants to dismiss the individual claims of the plaintiff Mary Bucksbaum Scanlan in each of the eight counts of the amended complaint, with prejudice.

Although there is no change in the allegations relevant to Mary's standing, there are major differences between the original and amended complaints. New parties and new claims are introduced. The new parties are Mary's minor children, Martin Michael Scanlan and Stella Clare Scanlan, who sue by Mary as their next friend and custodian. The children are plaintiffs in Counts III through VIII. (In Counts I and II, Mary is the only plaintiff.) The defendants move to dismiss some, but not all, of the counts brought on behalf of the children, and we will discuss each of these counts in turn.

### Count III

Count III alleges that the children are third-party beneficiaries of the lawyers' attorney-client relationship with the Trust Company. Plaintiffs allege that in their representation of the Trust Company, the lawyers were guilty of legal malpractice, which injured them as third-party beneficiaries. The injury was that the Trust Company was not advised to avoid the improper transactions that reduced the value of the corpus by over $200

million. As the remaindermen who will inherit the corpus upon Mary's death, the children will potentially sustain injury in fact by such a reduction in the value of the corpus. Burrows v. Palmer, 125 N.E.2d 484 (Ill. 1955). The attorneys argue, however, that as trust beneficiaries the children have no standing to sue the lawyers for malpractice in their representation of the Trust Company unless they can allege and prove that they were the intended primary beneficiaries of the lawyer-client relationship, citing, among other cases, Pelham v. Griesheimer, 440 N.E.2d 96 (Ill. 1982), and this court's decision in Williams v. Katz, No. 91 C 1593, 1994 WL 114850 (N.D. Ill. Apr. 4, 1994).

Count III does allege that "[t]he primary purpose and intent of Eisenberg, Melamed and the Law Firm's attorney-client relationship with the Trust Company in its capacity as trustee of Mary's Trusts was to benefit Mary, Martin Michael and Stella." (Am. Compl. ¶ 137.) Aside from this conclusory allegation, however, nothing is alleged that would tend to show that the primary purpose and intent was to benefit the plaintiffs. In opposing the motion to dismiss, the plaintiffs argue that the lawyers were aware of the beneficiaries' interest in the trust, and this, of course, is true. But that does not establish that the primary purpose of the lawyers' representation of the Trust Company was not to represent the Trust Company, but instead to represent the beneficiaries of the trusts. Other portions of the complaint

are inconsistent with the third-party-beneficiaries theory, as the lawyers point out in their reply brief at page 12. Count VII alleges that the lawyer defendants "had a fiduciary duty to act with the utmost fidelity and loyalty to [the trustee] and its interests." (Am. Compl. ¶ 174.)

The conclusory allegation in Count III is insufficient to keep the plaintiffs in court on their third-party beneficiary theory. See Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"). Under Pelham and the subsequent cases cited in Williams v. Katz, 1994 WL 114850 at *3, Count III must be dismissed. We see no prospect of a successful amendment, and the dismissal will therefore be with prejudice. But we think this is a matter of the plaintiffs' failure to state a claim, rather than failure to allege injury in fact. They have alleged injury in fact, but have failed to allege a legal basis to recover for the injury. Accordingly, we believe the dismissal should be pursuant to Rule 12(b)(6) (as was the dismissal in Williams v. Katz) rather than 12(b)(1). We will deny defendants' Rule 12(b)(1) motion in regard to Count III. We will consider Count III again when defendants move under Rule 12(b)(6).

The attorneys make a second argument as to why Count III should be dismissed: they cite authority to the effect that a trust

beneficiary lacks standing to maintain a suit against a third person for injury to the trust. See, e.g., Levenfeld v. Clinton, No. 83 C 3677, 1986 WL 4425, at *9 (N.D. Ill. Apr. 7, 1986). But as the court noted in that case, "Restatement § 282(2) recognizes the right of a beneficiary to sue a third person where the trustee refuses to bring an action." Id. at *11. The court held, however, that the exception did not apply in that case because the trustee had in fact filed an action "advancing the same claims pressed in the Counterclaim." Id. The defendant Eisenberg owns 60 percent of the Trust Company, and the defendant Melamed is an officer and board member. It is unrealistic to suppose that the Trust Company would file a suit against Eisenberg, Melamed and their law firm for legal malpractice, and we are not inclined to base any decision regarding Count III on the rule that only the trustee can sue.

## Count IV

In Count IV of the amended complaint, the minor children sue the Trust Company and attorneys Eisenberg and Melamed (as directors and officers of the Trust Company) for breach of fiduciary duty in conducting and facilitating some of the challenged transactions. The lawyer defendants have indicated that they will wait until their Rule 12(b)(6) motion to challenge Count IV. The Trust Company has not moved to dismiss Count IV.

## Count V

Count V is brought by the children against attorneys Eisenberg and Melamed and the law firm, alleging that they aided and abetted the Trust Company's breaches of fiduciary duty to the children.

The attorneys and the law firm have indicated that they will delay their challenge to Count V until their Rule 12(b)(6) motion.

## Count VI

Count VI is a "derivative" action brought by the children against attorneys Eisenberg, Melamed and the law firm on behalf of the Trust Company as trustee of Mary's trusts. The alleged malpractice was that the attorneys and the law firm failed to advise the Trust Company to avoid the challenged transactions and to retain independent counsel to advise it, due to the attorneys' and the law firm's conflicts of interest.

Count VI goes on to allege that it would be futile to make a demand on the Trust Company to bring the malpractice action against the attorneys and the law firm because attorney Eisenberg is a majority owner of the Trust Company and attorney Melamed is a director and holder of various offices in the Trust Company.

The lawyers and the law firm move to dismiss Count VI on two grounds. The first is that the plaintiffs have no standing to bring a derivative action on behalf of the corporation because they are not shareholders in the corporation. They cite several

authorities for the proposition that only shareholders can bring derivative actions on behalf of the corporation.

Plaintiffs respond that they need not be shareholders of the corporate trustee because they are not suing for injury to the corporation but for injury to the <u>trusts</u>. They cite numerous cases recognizing the right of a beneficiary to bring a derivative action on behalf of a <u>trust</u> when the trustee improperly refuses to sue.

The lawyers reply that Count VI seeks relief for injury to the Trust Company, the corporate trustee, not injury to the trusts, and therefore the shareholder requirement applies.

This debate requires a close examination of Count VI to see what entity is seeking relief. The complaint is that the attorneys failed to give proper advice to the corporate trustee, causing the trustee to engage in the transactions that caused the <u>trusts</u> "to suffer in excess of $200 million in damages." (Am. Compl. ¶ 171.) Clearly, the count seeks "in excess of $200 million in damages" as compensation to - or restoration to - the trusts, not to the Trust Company as a corporation.

The attorney defendants do not explain how the plaintiffs could bring a derivative action on behalf of "the trusts" as opposed to the trustee. Neither side has cited a case that discusses how the shareholder requirement applies when the corporation is serving as a trustee, and we believe there is a basis for making an exception to the shareholder requirement in the

corporate trustee situation. We will deny the motion of the attorneys and the law firm to dismiss Count VI for lack of standing.

### Count VII

Count VII is similar to Count VI. It asserts a derivative action on behalf of the Trust Company against the attorneys and the law firm for breach of fiduciary duty. The attorneys and the law firm move to dismiss Count VII on the same basis as they moved to dismiss Count VI, and the arguments are the same.

The motion to dismiss Count VII will be denied.

### Count VIII

Count VIII of the amended complaint is brought against the Trust Company, as trustee, and seeks its removal as trustee because of its breaches of trust, as described in the preceding counts. The Trust Company moves to dismiss Mary's portion of the count for lack of standing (which motion we are granting), but does not move to dismiss Count VIII to the extent that it is brought on behalf of the minor plaintiffs.

### Punitive Damages

The amended complaint concludes with a prayer for various relief, including punitive damages, against all of the defendants. The Trust Company argues that punitive damages are not recoverable against trustees for breaches of their fiduciary duties "absent allegations of extraordinary misconduct that is malicious or akin

to fraud," citing, inter alia, Kleinhans v. Lisle Savings Profit Sharing Trust, 810 F.2d 618, 627 (7th Cir. 1987). (Trust Co. Mem. at 11.) On this basis, the Trust Company moves to dismiss the prayer for punitive damages with prejudice "for lack of subject matter jurisdiction." (Id. at 13.)

We are not prepared to say that the allegations against the Trust Company, if proved, would as a matter of law be insufficient to establish conduct that is "akin to fraud." Therefore, we will deny the Trust Company's motion to dismiss the prayer for punitive damages.

## SUMMARY AND CONCLUSION

To sum up, this cause is dismissed with prejudice as to the plaintiff Mary Bucksbaum Scanlan pursuant to Rule 12(b)(1) for lack of Article III standing to sue. The defendants' Rule 12(b)(1) motions to dismiss the claims of Martin Michael Scanlan and Stella Clare Scanlan in Counts III, VI and VII are denied. The defendants are given until November 12, 2010 to file any Rule 12(b)(6) motions addressed to the amended complaint. Plaintiffs have until December 10, 2010 to respond to any motions that are filed, and the defendants may have until December 27, 2010 to reply.[3]

---

[3] Some of the arguments the defendants have made in support of their Rule 12(b)(1) motions appear to be more appropriate as arguments pursuant to Rule 12(b)(6). In their briefing of any Rule 12(b)(6) motions, the parties may, if they wish, incorporate by reference the arguments they have made on the 12(b)(1) motions to the extent that they apply to the Rule 12(b)(6) motions.

DATE:        October 14, 2010


ENTER:       _____
             John F. Grady, United States District Judge