## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARY BUCKSBAUM SCANLAN, individually, as Next Friend for MARTIN MICHAEL SCANLAN and STELLA CLARE SCANLAN, minors, and derivatively on behalf of GENERAL TRUST COMPANY, as Trustee,<br><br>　　　　Plaintiffs,<br><br>　　　v.<br><br>MARSHALL EISENBERG; EARL MELAMED; NEAL, GERBER & EISENBERG LLP, an Illinois limited liability partnership; and GENERAL TRUST COMPANY, a South Dakota corporation,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　No.　09 C 5026<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION
*(Rulings on the Defendants' Rule 12(b)(6)*
*Motions to Dismiss the Amended Complaint)*

The court has dismissed the claims of Mary Bucksbaum Scanlan ("Mary"), the original plaintiff, in all eight counts of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing. We will assume familiarity with the memorandum opinion dismissing those claims and the factual background provided therein. See Scanlan v. Eisenberg, No. 09 C 5026, 2010 WL 4065628 (N.D. Ill. Oct. 14, 2010).

We will now rule on the motions of the defendants to dismiss the claims of Mary's minor children, Martin Michael Scanlan and

Stella Clare Scanlan, brought by Mary as their Next Friend and custodian, pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted.

## THE MOTION OF GENERAL TRUST COMPANY

General Trust Company ("General Trust" or the "Trust Company") has filed a Rule 12(b)(6) motion to dismiss the claims against it in Counts IV and VIII.

### COUNT IV

In Count IV, the children allege that General Trust Company breached its fiduciary duties to them as remaindermen of Mary's trusts by engaging in the following acts:

> a. purchasing additional shares of General Growth stock by utilizing the Citi Loan during 2007 and 2008 despite the existing concentration of Mary's Trusts' assets in General Growth; and

> b. extending at least $90 million in unsecured loans to General Growth corporate insiders Freibaum and Michaels without obtaining adequate security for those loans and charging an interest rate that was inadequate to compensate Mary's Trusts for the risks associated with those loans.

(Am. Compl., Count IV, ¶ 149.) Count IV also alleges that the Trust Company breached its fiduciary duty "to inform Mary, both individually and as mother and custodian of Martin Michael and Stella, of the significant and material transactions described above and the risks associated with them before they were undertaken." (Id. ¶ 150.)

It is alleged that as a result of these breaches of fiduciary duty by the Trust Company, the value of the trusts was diminished by more than $200 million.

The Trust Company argues that all of the acts and omissions complained of were specifically authorized by the trust instruments themselves and therefore cannot support claims for breach of fiduciary duty. The defendant does not dispute "the uncontroverted proposition that even where conduct is authorized by a trust instrument, a trustee is not relieved of its duty to use reasonable prudence in connection with that authorized conduct." (General Trust Reply at 6.) It contends, however, that Count IV contains no well-pleaded allegations that there were any failures to use reasonable prudence.

The initial question, then, is whether Count IV states any plausible claim that the Trust Company failed in its fiduciary duty of prudence to the children as remaindermen of the trusts.

### The Stock Purchases

We begin with a dispute as to what Count IV actually says about the stock purchases. In their response, the plaintiffs argue that the challenged stock purchases were imprudent because they increased Mary's concentration in General Growth stock "and because GTC, Eisenberg and Melamed knew that General Growth was facing severe financial problems and its stock price was declining rapidly during the period when those transactions took place." (Resp. at

10 (emphasis added).) Allegation "a" itself makes no reference to a falling stock price; it refers only to purchasing additional shares "despite the existing concentration." Allegations of a falling stock price have to be found in the paragraphs that are incorporated into Count IV, and, of the five paragraphs cited by plaintiffs in their response, only paragraph 86 is relevant to allegation "a." It states that "[o]n March 28, 2008, notwithstanding the decline in the price of General Growth stock to $36 dollars," the Trust Company used the Citi Loan to purchase more than $47 million worth of additional General Growth stock for Mary's trusts. Paragraph 86 does not indicate what plaintiffs regard as the amount of the price decline, or the point from which they measure the decline, so the alleged imprudence of the purchase is not actually described. More importantly, the 2007 purchase of additional shares referred to in allegation "a" is described only in paragraph 77 of the amended complaint, and there is no reference to a declining price. What is alleged is that "[f]rom August 3, 2007 to August 20, 2007, the Trust Company used the proceeds of the Citi Loan to purchase more than 5.2 million additional shares of General Growth stock for the benefit of Mary's Trusts at a cost of more than $260,000,000." Of the stock purchases referred to in allegation "a," then, $47 million worth is alleged to have been made during a period of declining price and $260 million worth is not alleged to have been made during a period of declining price.

We do not regard the language of the complaint concerning increasing concentration (or failure to diversify) as adequately alleging abuses of discretion that would warrant relief against the Trust Company, and we do not understand the plaintiffs to contend otherwise.

The defendant argues that the purchase of stock at a declining price is not an abuse of discretion and is sometimes a wise investment move. That may be so, but more than that is alleged here. Quite aside from the question of declining price, Count IV's allegation as to the _purpose_ of both the 2007 and 2008 purchases implicates the fiduciary duties of both reasonable prudence and loyalty.

Paragraph 98 alleges as follows:

In the Fall of 2008, Mary called Eisenberg for an explanation as to why her Trusts had bought more General Growth stock as it was declining. Eisenberg responded by telling her that the additional purchases were intended to "stabilize" the General Growth stock price by showing the market that the Bucksbaum family was continuing to buy stock. Eisenberg also told Mary that "we have done it before."

This alleged statement by Eisenberg (the principal decision maker for the Trust Company) provides an explanation for the 2007 and 2008 purchases that could be found to be inconsistent with Mary's and her children's best interests. The defendant argues that if the stock was stabilized, that would necessarily be in the best interests of all Bucksbaum family members, including Mary and her children. We do not see it that way. First, "stabilizing" the

price at a low level would not necessarily be a prudent reason for
Mary to buy more stock. If the effort to stabilize the price
failed — as it obviously did, with the price falling to less than
$2.00 per share by the latter part of 2008 — it could hardly be
considered to have been a prudent investment. Its purpose was not
to make money (the ordinary purpose of investments) but to stop
further loss, a highly unusual reason for purchasing stock. We
think that Count IV states a claim against the Trust Company for
breach of the fiduciary duty of prudence.

Paragraph 105 of the amended complaint, incorporated in Count
IV, asserts:

> The Trust Company compounded its failure to diversify
> Mary's Trusts by purchasing additional General Growth
> shares when Mary's Trusts were already highly
> concentrated in General Growth. In doing so, the Trust
> Company subordinated Mary's interests to the interests of
> General Growth and other Bucksbaum family members in an
> attempt to stabilize General Growth's stock price.

While the amended complaint does not expressly allege that Mary was
the only one tapped by the Trust Company for these "stabilizing"
purchases, neither does it allege that any other member of the
Bucksbaum family (or Eisenberg and Melamed, who held large
quantities of General Growth stock) bought any shares of General
Growth stock during the times that the Trust Company was purchasing
$300 million worth for Mary's trusts. If in fact any of the other
family members, or Eisenberg or Melamed, had made any such
purchases, we assume the Trust Company would have brought it to our

attention. It appears that all of the stabilizing purchases were made with no help from anyone else. Had these purchases been successful in halting the decline of the stock price, the other family members, as well as Eisenberg and Melamed, would have benefitted to that extent. The fact that the efforts were unsuccessful cost them nothing. Mary's trusts, on the other hand, lost money on the purchases and would not necessarily have gained anything had the "stabilization" been successful.

The reasonable inference from the allegations concerning the stock purchases is that the Trust Company exposed the trust beneficiaries to an unreasonable risk of loss that was intended to benefit the beneficiaries of other Bucksbaum family trusts as well as the defendants Eisenberg and Melamed. We believe that a plausible claim is stated for a breach of the fiduciary duty of loyalty.

### The Loans

We turn now to allegation "b" of Count IV, which concerns the Freibaum and Michaels loans. Plaintiffs do not seek return of the amounts of the loans, since there is no allegation that the principal amounts were lost to the trusts. Rather, the claim seeks to recover the difference between the interest rate that was charged and an interest rate that would have been adequate "to compensate Mary's Trusts for the risks associated with those loans." (Am. Compl. ¶ 149.) Paragraphs 79 and 85 of the amended

complaint allege that the loans were made at the "extremely low London Interbank Offered Rate (the "LIBOR Rate"), a rate that did not adequately take into consideration the risk of loss to Mary's Trusts associated with making the unsecured loan."

The Trust Company argues that this conclusory assertion about a deficient interest rate is simply too vague to state a claim. It asserts that plaintiffs "fail to allege any facts or circumstances suggesting that use of the LIBOR rate--a widely used benchmark for financial instruments--was inappropriate." (General Trust Mem. at 21.) Even though they do not contain these facts, the allegations of the complaint are clearly sufficient to state a plausible claim. Obviously, the LIBOR rate--that which banks charge each other-- would normally be lower than the rate for unsecured loans made to individuals. There is no reason to think that the differential between the LIBOR rate and the rate or rates that would have been appropriate for the Freibaum and Michaels loans would have been de minimis.

Another claim in Count IV is that General Trust breached the fiduciary duty it owed to Mary "by unreasonably failing to sue the Law Firm for legal malpractice as described in Count VI of this Amended Complaint." (Am. Compl. ¶ 151.) The defendant points out that Mary has been dismissed from the case for lack of standing. Plaintiffs respond that they should have alleged that the fiduciary duty was owed to both Mary and her children. (Resp. at 31 n.15.)

They offer to make this allegation in a second amended complaint if the court deems it necessary. Id. It will not be necessary, because the facts alleged do not, in our opinion, amount to a plausible claim.

The malpractice allegations in Count VI that Count IV alleges should have been the basis of a malpractice suit by General Trust against the Law Firm include everything the plaintiffs claim the Law Firm did wrong. The common theme is the failure of the Law Firm to advise General Trust not to engage in the challenged stock purchases and loans and to retain independent counsel to advise it. We agree with General Trust that it would not be reasonable to hold it to an obligation to sue the attorney defendants for malpractice. Considering the relationship between the attorneys and General Trust, it is unrealistic to think that General Trust would have brought such a suit. The attorneys - the supposed defendants in the malpractice suit — according to the complaint's allegations owned and controlled General Trust. A decision to sue the attorneys would have to have been made by the General Trust Board, controlled by the defendants Eisenberg and Melamed. Obviously, Eisenberg and Melamed would not vote to sue themselves. It makes no sense to blame General Trust for what would have been the self-interested decision by Eisenberg and Melamed that would surely have been made had the idea of a malpractice suit ever arisen. The claim that General Trust breached a fiduciary duty by failing to

sue the attorneys is dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a plausible claim.

As to the allegation that the Trust Company breached a fiduciary duty to inform both Mary and her children of the challenged stock purchases and loans before they were undertaken, Count IV ¶ 150, the Trust Company argues that this claim should be dismissed because no such duty exists. (General Trust Mem. at 23-25.) The defendants cite authority the plaintiffs claim is outdated, Resp. at 29-31, and argue that current law is set forth in Section 82 of the Restatement (Third) of Trusts (2007). In its reply, the defendant points out that the Restatement (Third) has not been adopted in Illinois and that the Restatement (Second), which does not require the kind of disclosure sought by plaintiffs, is currently the law of Illinois.

We do not regard the question of whether the Restatement (Third) has been adopted by the Illinois courts as dispositive of whether the rule suggested in the Restatement is likely to be adopted by the Supreme Court of Illinois when the matter is squarely presented. Rather, we look at the merits of the rule suggested in the Restatement and consider the likelihood of its adoption in that light. The fact is that we can see no reasonable alternative to subsection (1)(c) of § 82 of the Restatement (Third) to the effect that a trustee has a duty "to keep fairly representative beneficiaries reasonably informed of ... significant

developments concerning the trust and its administration, particularly material information needed by beneficiaries for the protection of their interests." Comment d to this subsection provides the following explanation:

> The rule of Subsection (1)(c) does not impose a regular or routine requirement of reporting or accounting. It does, however, impose an affirmative requirement that, if and as circumstances warrant over the course of administration, the trustee inform fairly representative beneficiaries of important developments and information that appear reasonably necessary for the beneficiaries to be aware of in order to protect their interests.

Id.

The defendant does not argue that this is an unreasonable rule. It makes no argument at all concerning the merits. Its only point is that the Restatement (Third) has not been adopted by the Illinois Supreme Count. But we can think of no reason the Court would reject a rule that simply requires a trustee to disclose "material information needed by beneficiaries for the protection of their interests" (emphasis added). The alternative would be to hold that a trustee has no such duty.

We think the challenged purchases and loans (including the interest rates) could reasonably be found by the trier of fact to have been matters that should have been disclosed to the beneficiaries in advance so that they could have taken steps to prevent them. We therefore deny the motion to dismiss the allegation that the Trust Company breached a fiduciary duty to inform the beneficiaries in advance of these transactions.

To sum up the rulings as to the Count IV claims against General Trust Company:

(a) The motion to dismiss the claims for breach of fiduciary duty in regard to the 2007 and 2008 stock purchases is denied. The claimed breaches of the duty of reasonable prudence and the duty of loyalty are adequately stated;

(b) The motion to dismiss the claim for breach of the fiduciary duty of prudence in charging insufficient interest on the Michaels and Freibaum loans is denied;

(c) The motion to dismiss the claim for breach of fiduciary duty to bring a malpractice suit against the defendant Law Firm is granted, and the claim is dismissed with prejudice; and

(d) The motion to dismiss the claim for breach of a fiduciary duty to inform Mary's children of the challenged stock purchases and loans before they were undertaken is denied.

## COUNT VIII

Count VIII seeks the removal of General Trust Company as trustee on the ground that it has committed the various violations of fiduciary duty discussed in Count IV. The basis of the Trust Company's motion to dismiss Count VIII is that, as a matter of law, it has committed none of the breaches alleged. As we indicated in our discussion of Count IV, plaintiffs have stated adequate claims against the Trust Company for several alleged breaches of fiduciary duty, and the defendant's motion to dismiss those claims was

denied.  The motion to dismiss Count VIII is denied to the same extent.

### THE MOTION OF THE DEFENDANTS
### EISENBERG AND MELAMED AND THE LAW FIRM

The defendants Eisenberg and Melamed individually and the Law Firm have filed a Rule 12(b)(6) motion to dismiss the claims against them in Counts III, IV, V, VI and VII.  We will discuss each count in turn.

### COUNT III

In our opinion of October 14, 2010, we discussed the defendants' motion to dismiss Count III pursuant to Rule 12(b)(1). 2010 WL 4065628 at *4-5.  We agreed with the defendants that Mary's children cannot be regarded as third-party beneficiaries of the attorney defendants' attorney-client relationship with the Trust Company, because they are not the intended primary beneficiaries of that lawyer-client relationship.  We indicated, however, that the dismissal of Count III should be based on failure to state a claim rather than lack of standing and stated that we would consider Count III again when the defendants filed their Rule 12(b)(6) motions.  Id. at *5.

The lawyer defendants have now moved to dismiss Count III pursuant to Rule 12(b)(6) and incorporate the arguments they made on their Rule 12(b)(1) motion.  The plaintiffs' response includes no substantive discussion of Count III.

Count III will be dismissed with prejudice.

## COUNT IV

The defendants Eisenberg and Melamed are named in Count IV along with the defendant Trust Company. They are charged with having caused and participated in the Trust Company's alleged breaches of fiduciary duty. Their motion to dismiss Count IV is based on two grounds. First, they adopt the Trust Company's arguments that there were no breaches of fiduciary duty. To the extent that we have held otherwise, that argument is rejected. Their second ground is that even if the Trust Company is liable, Eisenberg and Melamed cannot be held personally responsible as officers and directors for the Trust Company's breaches of fiduciary duty.

Count IV incorporates paragraphs 14 and 65, which allege that Eisenberg and Melamed approved the challenged stock purchases and loan transactions when acting as officers and directors of the Trust Company and as two of its three-member Trust Committee. Plaintiffs allege:

> As directors and officers of the Trust Company, Eisenberg and Melamed are personally liable for the diminution in the value of Mary's Trusts because they knowingly caused and participated in the Trust Company's breaches of its fiduciary duties.

(Am. Compl. ¶ 153.)

Eisenberg and Melamed argue that the claim against them in Count IV is essentially that they conspired with the Trust Company,

or aided and abetted the Trust Company, in the breach of the duty owed to the plaintiffs, and that such a theory is not sustainable under Illinois law. They would be liable only for breach of fiduciary duty they owed to the plaintiffs independently of their roles as officers and directors of General Trust Company, and there was no such duty. Defendants cite several Illinois cases that they believe support their view. (Lawyer Defs.' Mem. at 4-6.) They repeatedly cite Franz v. Calaco Development Corp., 818 N.E.2d 357, 365-66 (Ill. App. Ct. 2004), which held that the chief operating officer of a general partner, simply by virtue of holding the position, owed no fiduciary duty to a limited partner. The court noted that the chief operating officer "did not directly, personally share in the profits of the partnership." Id. at 366.

In their response, the plaintiffs cite authority holding that officers who participate in breaches of fiduciary duty owed by the corporation can be held personally liable. In Allabastro v. Cummins, 413 N.E.2d 86 (Ill. App. Ct. 1980), individual officers of a corporate mortgage broker were held personally liable for instigating or participating in a breach of the fiduciary relationship owed by the mortgage broker to plaintiffs, who were loan applicants. The court stated:

> This record convinces us the individual defendants both participated personally in this transaction and breach of fiduciary relationship. "As a general rule a corporate officer or director is not liable for the fraud of other officers or agents merely because of his official character, but he is individually liable for fraudulent

acts of his own or in which he participates." In the instant case, Weissman and Cummins respectively were president and vice president of Equity. The corporation necessarily acted only through them. Allabastro's uncontroverted testimony indicates he personally dealt with both Weissman and Cummins. When Allabastro demanded return of his $1500 deposit, he was continually stalled. These delaying tactics were pursued by both of the individual defendants. Such evidence demonstrates both corporate officers personally instigated or participated in this breach of the fiduciary relationship. Therefore, the trial court did not err in finding these defendants personally liable.

Id. at 89 (quotation marks omitted) (citing Citizen Sav. & Loan Ass'n. v. Fischer, 214 N.E.2d 612, 615 (Ill. App. Ct. 1966); 13 Illinois Law and Practice, Corporations §§ 210, 211.

Plaintiffs also rely on the following statement from Scott and Ascher on Trusts:

Any director or officer who knowingly causes the corporation to commit a breach of trust that results in a loss to a trust administered by the corporation is personally liable to the trust beneficiaries. ... [T]he director or officer violates a duty not only to the corporation but also to the trust beneficiaries. ... If the director or officer knew that the corporation was committing breaches of trust and took no action to prevent them or to protect the interests of the beneficiaries, it seems clear that the director or officer is liable to the beneficiaries. ... Directors and officers owe a duty to the trust beneficiaries to use a reasonable amount of care in protecting trust property. The extent of that care depends, of course, on the nature of the position. Some officers are responsible only for the institution's general conduct. This is true of directors generally, but those who are also members of committees or salaried officers have more extensive duties.

5 Austin Wakeman Scott et al., Scott and Ascher on Trusts § 30.6.3, at 2118-21 (4th ed. 2008) (hereinafter "Scott").

Eisenberg and Melamed argue that if officers of a corporate trustee were held liable for participating in the corporation's breaches of fiduciary duty, this would subject the corporate officers of institutions such as the Northern Trust Company "to potential personal liability for breach of fiduciary duty claims simply as a result of his or her employment." (Lawyer Defs.' Mem. at 5-6.) We are not certain what the point is. If a corporate officer is complicit in the breach of a trust to the extent that Eisenberg and Melamed are alleged to have been, it seems to us to be altogether proper that he should be subject to personal liability. Employees who are simply carrying out orders and may not be fully aware of the risks involved in the challenged transactions are a different matter.

In their reply brief, Eisenberg and Melamed cite Seventh Circuit cases holding that a federal court sitting in diversity should not entertain a case where the plaintiff is seeking to create a new, unrecognized state law claim. The sense of this doctrine, and its inapplicability to the present case, is indicated by the following language from Pisciotta v. Old National Bancorp, 499 F.3d 629, 639-40 (7th Cir. 2007):

> Plaintiffs have not come forward with a single case or statute, from any jurisdiction, authorizing the kind of action they now ask this federal court, sitting in diversity, to recognize as a valid theory of recovery under Indiana law. We decline to adopt a "substantive innovation" in state law, Combs v. Int'l Ins. Co., 354 F.3d 568, 578 (6th Cir. 2004), or "to invent what would be a truly novel tort claim" on behalf of the state,

Insolia [v. Philip Morris, Inc.], 216 F.3d [596,] 607
[7th Cir. 2000)], absent some authority to suggest that
the approval of the Supreme Court of Indiana is
forthcoming. See Todd [v. Societe Bic, S.A.], 21 F.3d
[1402,] 1412 [7th Cir. 1994] (noting that federal courts
should be wary of broadening untested theories of
liability under state law); see also Insolia, 216 F.3d at
607 (noting that we would neither recognize independently
nor certify a question to the state regarding "every
creative but unlikely state cause of action that
litigants devise from a blank slate"); Birchler v. Gehl
Co., 88 F.3d 518, 521 (7th Cir. 1996) (favoring narrow
interpretation of undecided issues of liability under
state law); Ry. Express Agency, Inc. v. Super Scale
Models, Ltd., 934 F.2d 135, 138 (7th Cir. 1991) (noting
that "recent opinions of this court have strongly
encouraged district courts to dismiss actions based on
novel state law claims").

What we have in the present case is not a novel claim unknown to

Illinois law, but a claim supported by several decisions of the

Illinois Appellate Court.  In that situation, we

determine the question as we predict the Supreme Court of
Illinois would if it were deciding the case. The
decisions of the Illinois Appellate Court are persuasive
authority.  Although those decisions do not bind us, we
shall follow them unless we have a "compelling reason" to
believe that they have stated the law incorrectly.

Adams v. Catrambone, 359 F.3d 858, 862 (7th Cir. 2004) (internal

citations omitted).

We believe that, if presented with the issue in an appropriate

case, the Illinois Supreme Court would adopt the rule expressed in

quotation from Scott and Ascher, supra.  On that basis, we hold

that plaintiffs have made a plausible claim against the individual

defendants Eisenberg and Melamed in Count IV insofar as the

challenged stock purchases and loans and the failure to disclose

are concerned, and to that extent the motion of Eisenberg and Melamed to dismiss Count IV is denied.

## COUNT V

In Count V of the amended complaint the plaintiffs allege that Eisenberg, Melamed and the Law Firm, "as counsel to the Trust Company, aided and abetted the Trust Company in breaching its fiduciary duties to Mary, Martin Michael and Stella" when the Trust Company engaged in the challenged stock purchases and loans alleged in Count IV.

The lawyer defendants move to dismiss Count V on the ground that, as a matter of Illinois law, a lawyer cannot aid and abet a client. They rely on the principle that a conspiracy requires two separate actors, and because a principal and its agent are considered under the law of agency to be one and the same, there can be no conspiracy between a principal and its agent. Because a lawyer is the agent of his client, this same principle applies: there can be no conspiracy between a client and its lawyer. Taking the argument to the next level, the defendants argue that aiding and abetting is like conspiracy in that it requires two actors — the principal and the aider and abettor — with the result that there can be no cause of action against an agent, including a lawyer, for aiding and abetting his principal or client.

There is no Illinois Supreme Court case addressing the question of whether a lawyer can be found liable for aiding and

abetting a client, so here again we must predict what the Court
will do when presented with the question.

Plaintiffs rely on the Illinois Appellate Court case of
Thornwood, Inc. v. Jenner & Block, 799 N.E.2d 756 (Ill. App. Ct.
2003) as holding that Illinois law does recognize the liability of
an attorney for aiding and abetting the wrongful conduct of his
client. The Thornwood court stated:

> Although Illinois courts have never found an attorney
> liable for aiding and abetting his client in the
> commission of a tort, the courts have not prohibited such
> actions.
> . . .
> Accordingly, we see no reason to impose a per se bar that
> prevents imposing liability upon attorneys who knowingly
> and substantially assist their clients in causing another
> party's injury.

Id. at 768. The court noted that Illinois cases have recognized
claims for conspiracy "where there is evidence that the attorneys
participated in a conspiracy with their clients." Id. The lawyer
defendants consider this comparison to the conspiracy situation as
something that discredits Thornwood as good authority, since there
are cases holding that a lawyer cannot conspire with a client.
There does appear to be a split of authority in Illinois as to
whether a lawyer can conspire with a client, but we do not regard
that split as invalidating the holding of the court in Thornwood.
There is an important distinction between a conspiracy and aiding
and abetting. A conspiracy requires an agreement (a conspiracy is
an agreement). Aiding and abetting, on the other hand, can take

place in the absence of an agreement. We note <u>Thornwood's</u>
discussion about the elements of an aiding and abetting claim:

> In Illinois, a claim for aiding and abetting includes the
> following elements:
> "(1) the party whom the defendant aids must perform a
> wrongful act which causes an injury; (2) the defendant
> must be regularly aware of his role as part of the
> overall or tortious activity at the time that he provides
> the assistance; (3) the defendant must knowingly and
> substantially assist the principal violation." <u>Wolf v.
> Liberis</u>, 153 Ill. App. 3d 488, 496, 106 Ill. Dec. 411,
> 505 N.E.2d 1202 (1987) (recognizing the elements of
> claims for aiding and abetting and concert of action but
> failing to find liability where there were no allegations
> that the codefendant agreed to assist <u>or substantially
> assisted in the commission of tort resulting in the
> plaintiff's injury)</u>.

<u>Id.</u> at 767 (emphasis added). There might be an agreement, and, as
a practical matter, there usually would be. But the point is that
there need not be, and, as a matter of law, there is no reason the
aider and abettor could not be found liable even in the absence of
knowledge on the part of the principal violator that he is being
aided and abetted.

We regard <u>Thornwood</u>, therefore, as good authority for the
proposition that an attorney can be held liable for aiding and
abetting his client. The conspiracy cases relied on by the lawyer
defendants, emphasizing the identity of lawyer and client for
agency purposes, are distinguishable.

Another authority relied on by the plaintiffs is <u>Hefferman v.
Bass</u>, 467 F.3d 596 (7th Cir. 2006). There, the district court had
dismissed an aiding and abetting claim against a lawyer for

participating in his client's breach of fiduciary duty to his business partner. The dismissal was on the basis that the complaint contained insufficient information to provide fair notice to the attorney defendant. The Seventh Circuit reversed and remanded for further proceedings, holding that the complaint contained sufficient information. The defendant had not claimed that there was no such cause of action in Illinois, so neither the district court nor the Seventh Circuit had occasion to address the question. Significantly, however, the Seventh Circuit, citing Thornwood, recited the three elements of aiding and abetting liability and expressed no surprise that a lawyer could be liable for aiding and abetting his client. 467 F.3d at 601.

We believe that the Illinois Supreme Court, when presented with the question, will hold that a lawyer can be liable for aiding and abetting his client.

Another argument made by the lawyer defendants is that aiding and abetting requires two separate actors, and plaintiffs' allegations, as discussed in relation to Count IV, are essentially that Eisenberg and Melamed so dominated the affairs of General Trust Company that the company cannot be regarded as a separate entity. The argument that the corporation was the alter ego of Eisenberg may come up again at a later point in this proceeding, but that will be a factual issue, not a pleading question. We think for present purposes the existence of General Trust Company

as a corporate entity separate from Eisenberg (and certainly Melamed, who is not alleged to have any ownership interest) and the Law Firm is adequately alleged.

The motion to dismiss is denied as to Count V.

## COUNTS VI AND VII

Counts VI and VII are closely related. In Count VI, the plaintiffs sue the lawyer defendants derivatively on behalf of General Trust Company for legal malpractice in failing to advise the Trust Company not to engage in the challenged stock purchases and loans and failing to withdraw from their representation of the Trust Company due to their conflicts of interest. Count VII, also brought derivatively on behalf of General Trust Company, charges the lawyer defendants with breaching their fiduciary duty of loyalty to the Trust Company by approving the stock purchases and loans in an effort to prop up General Growth's stock price.

Neither count alleges that General Trust Company sustained any damages. The damages, in the amount of $200 million, are alleged to have been sustained by Mary's trusts.

Defendants argue that a necessary element of either a malpractice or a breach of fiduciary duty claim is damages sustained by the client or the person to whom the fiduciary duty is owed. Defendants reason that because General Trust Company, the defendants' client and the entity to whom the fiduciary duty was owed, sustained no damages, General Trust Company has no legal

malpractice or breach of fiduciary duty claim that can be asserted either by itself or by the plaintiffs derivatively. Neither count alleges that the defendants had any duty, or breached any duty, owing to the trusts or the plaintiff beneficiaries.

Defendants' damages and duty argument is a red herring; it misconstrues the nature of a trust derivative claim. There is no dispute that plaintiffs are seeking damages in Counts VI and VII for harm to the trusts. The contention that these tort claims must be dismissed because the lawyers' duties ran not to the trusts but to the Trust Company ignores the fact that the plaintiffs have a right to sue the lawyer defendants on behalf of the lawyers' client, the Trust Company (since the Trust Company has failed to do so) and also to sue the Trust Company on their own behalf. Plaintiffs cite to a New York decision that explains the basic principle:

> It is fundamental to the law of trusts that *cestuis* have the right . . . to sue for the benefit of the trust on a cause of action which belongs to the trust if the trustees refuse to perform their duty in that respect. The derivative suit is, in effect, a combination of two causes of action[,] one against the trustees for wrongfully refusing to sue and the other against the party who is liable to the trust.

In re Blumenkrantz, 824 N.Y.S.2d 884, 888 (N.Y. Surr. Ct. 2006); see also 5 Scott, supra, § 28.2.1 ("If the trustee improperly refuses to bring an action against a third party who commits a tort with respect to the trust property, the beneficiaries can maintain a suit in equity against the trustee to compel the trustee to bring

an action against the third party. . . . [T]he whole controversy can be settled in a single suit, by allowing the beneficiaries to join the third party as a co-defendant, thus avoiding multiple suits, one in equity by the beneficiaries against the trustee and another at law by the trustee against the third party."); George Gleason Bogert & George Taylor Bogert, Law of Trusts and Trustees § 954 (rev. 2d ed. 1995) ("[I]f the trustee . . . will not enforce the cause of action which he has against the third person, the beneficiary is allowed to enforce it by a suit in which the third person and the trustee are joined, in order that the claim may not be lost or prejudiced. In such a case, however, the beneficiary is not acting on a cause of action vested in him, but is acting for the trustee.").

Defendants also move to dismiss Count VII on the additional ground that it is duplicative of Count VI insofar as it is asserted against them "as lawyers." Plaintiffs respond that Count VII is based on conduct that occurred when the lawyer defendants acted in their capacities as officers and directors of the Trust Company and as members of its Trust Committee and is in no way based on their conduct as lawyers for the Trust Company. As we see it, the allegations in Count VII that "Eisenberg, Melamed and the Law Firm provided legal advice to the Trust Company" and that "[a]s the Trust Company's attorneys, Eisenberg, Melamed and the Law Firm had a fiduciary duty to act with the utmost fidelity and loyalty to the

Trust Company" are merely introductory language, as discussed below. (Am. Compl. ¶¶ 173-74.)

The lawyer defendants' motion to dismiss is denied as to Counts VI and VII.

## DEFENDANTS' MOTIONS TO STRIKE
## VARIOUS ALLEGATIONS UNDER RULE 12(f)

### Punitive Damages

The lawyer defendants move to strike the plaintiffs' prayer for punitive damages insofar as it relates to Counts V and VII on the ground that an Illinois statute prohibits the assessment of punitive damages on claims "related to the provision of legal services." (Lawyer Defs.' Mem. at 23 (citing 735 ILCS 5/2-1115).) The plaintiffs respond that the statutory ban on punitive damages is limited to claims for legal malpractice and that neither Count V nor Count VII alleges legal malpractice. We think this is too narrow a reading. Whether a plaintiff is alleging what amounts to legal malpractice or not, if the complaint alleges conduct that is "arising out of the provision of legal services," the statute applies. Safeway Ins. Co. v. Spinak, 641 N.E.2d 834, 837 (Ill. App. Ct. 1994). Count V of the amended complaint is distinguishable from Count IV principally by the allegation that "Eisenberg, Melamed and the Law Firm, as counsel to the Trust Company, aided and abetted the Trust Company in breaching its fiduciary duties." (Am. Compl. ¶ 155 (emphasis added).) It is not

clear to us that what legal services were involved in the alleged aiding and abetting, but the defendants have not complained of Count V's vagueness in this respect. What is important for purposes of the motion to strike the claim for punitive damages is that in Count V the plaintiffs seek to recover damages from the lawyer defendants for their acts "as counsel" to the trust company. Whatever the defendants are alleged to have done in that capacity is, by plaintiffs' own description, clearly arises out of the provision of legal services.

We reach a different conclusion as to Count VII. Count VII alleges a breach of fiduciary duty by Eisenberg, Melamed and the Law Firm and alleges in ¶¶ 173-175 that Eisenberg, Melamed and the Law Firm served as attorneys for the Trust Company and provided legal advice concerning the company's duties regarding Mary's trusts. But these paragraphs are introductory; they do not assert the substance of the claim. That begins at ¶ 176, which alleges:

> Eisenberg and Melamed, acting in their capacity as directors and officers of the Trust Company and members of the Trust Company's Trust Committee, breached their fiduciary duty of loyalty to the Trust Company . . . .

The claim in Count VII is against Eisenberg and Melamed in their role as officers and directors of the Trust Company, not in their

role as attorneys for the Trust Company.[1]  The claim for punitive damages in Count VII is not covered by the statutory ban.

The defendants' motion to strike the prayer for punitive damages is granted as to Count V and denied as to Count VII.

### Jury Demand

Next, all defendants move to strike plaintiffs' jury demand on the basis that all of their claims are equitable.  Plaintiffs point out that they are seeking money damages against the lawyer defendants and are entitled to a jury trial on these claims.  We will deny the defendants' motion at this time, without prejudice to a reconsideration of the issue when the case is ready for trial and we know for certain which claims will be presented.

### Allegations Relating to the Loans

Finally, the lawyer defendants move to strike numerous paragraphs of the amended complaint relating to the Freibaum and Michaels loans.  They argue that these allegations are immaterial because the only claim is a modest one for interest on the loans, with no loss involved.  The plaintiffs respond that the loan transactions will be admissible as proof of the Trust Company's breach of fiduciary duty, quite aside from any monetary loss

---

[1]      The role of the partners in the law firm other than Eisenberg and Melamed is not described, and we doubt that there is any basis for holding them liable for Eisenberg and Melamed's conduct as officers and directors of a company that also happens to be a client.

sustained. They also contend that the amount of interest involved is substantial.

Like the question of the jury demand, the Freibaum and Michaels loans can await further developments in the case. To the extent that these unsecured loans were imprudent at the time they were made (regardless of how they turned out), the facts concerning them could be admissible against the Trust Company and Eisenberg and Melamed as well. This will be a matter of the admissibility of evidence, not a matter of pleading, and we will know before trial what evidence is going to be admitted concerning the loans and the question of interest. Allegations of the complaint concerning matters that turn out to be inadmissible will not be made known to the jury, since the complaint is not sent to the jury and the statements of counsel will be limited to evidence that will be admissible. The motion to strike the allegations concerning the Freibaum and Michaels loans is denied.

## CONCLUSION

The motion of General Trust Company to dismiss Counts IV and VIII of the amended complaint [131] is granted in part and denied in part as indicated in the foregoing discussion. The motion of the attorney defendants and the Law Firm to dismiss Counts III-VII [128] is granted as to Count III and denied as to Counts IV, V, VI, and VII. Count III is dismissed with prejudice.

The motions to strike are denied in large part and granted only as to the prayer for punitive damages in Count V.


DATE:          March 9, 2011


ENTER:        _____
              John F. Grady, United States District Judge