## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARY BUCKSBAUM SCANLAN | ) | |
| Individually, and Next Friend for | ) | |
| MARTIN MICHAEL SCANLAN and | ) | |
| STELLA CLARE SCANLAN, minors, | ) | |
| and derivatively on behalf of | ) | |
| GENERAL TRUST COMPANY, | ) | |
| as Trustee, | ) | Case No. 09 C 5026 |
| | ) | |
| Plaintiffs, | ) | Magistrate Judge Morton Denlow |
| | ) | |
| v. | ) | |
| | ) | |
| MARSHALL EISENBERG, EARL | ) | |
| MELAMED, NEAL, GERBER & | ) | |
| EISENBERG, LLP, an Illinois limited | ) | |
| liability partnership, and GENERAL | ) | |
| TRUST COMPANY, a South Dakota | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant General Trust Company's Motion to Compel
Production of Documents or, Alternatively, For *In Camera* Review. [Dkt. 283]. General
Trust Company believes that *ex parte* communications took place between one of Plaintiff
Mary Scanlan's attorneys and an officer, director, and trust committee member of Defendant
General Trust in violation of Rule 4.2 of the ABA Model Rules of Professional Conduct and
the identical Rule 4.2 of the Illinois Rules of Professional Conduct. Pursuant to Fed. R. Civ.
P. 37(a), General Trust asks the Court to exercise its discretion and compel production of
documents necessary to understand the extent of these communications and any prejudice

caused thereby.

On August 17, 2012, the Court ordered Plaintiff's counsel to submit David Grossberg's notes and internal communications describing his communications with Michael Greaves for *in camera* review. [Dkt. 303]. The Court has reviewed the documents *in camera*. An oral argument was held on September 10, 2012. For the reasons set forth below, the Court grants the portion of the motion requesting *in camera* review and denies the portion of the motion asking the Court to compel production of documents including all written materials and communications from within the firm of Scanlan's counsel Schiff Hardin LLP, or with any third parties related to the Michael Greaves communications.

## I. BACKGROUND FACTS

### A. The Parties and Non-Party.

Plaintiff Mary Bucksbaum Scanlan ("Scanlan" or "Plaintiff"), individually, as next friend for her children, and derivatively on behalf of General Trust, has sued attorneys Marshall Eisenberg, Earl Melamed and Neal, Gerber & Eisenberg (the "Lawyer Defendants") and the trustee of her trusts, General Trust Company ("General Trust"). Eisenberg and Melamed were directors and officers of General Trust and also represented General Growth Properties ("General Growth"). Plaintiffs allege that General Trust imprudently purchased additional shares of General Growth stock and made loans to General Growth insiders. Plaintiffs also allege that the Lawyer Defendants engaged in legal malpratice and breached their fiduciary duties arising out of events that took place in 2007 and 2008.

Plaintiffs are represented by Schiff Hardin LLP. In addition to their involvement in

this litigation, Schiff Hardin has been retained to advise Scanlan on her personal assets and investments. David Grossberg ("Grossberg"), a Schiff Hardin real estate attorney, is actively involved in the financial advising. General Trust is represented by Sidley Austin LLP. The Lawyer Defendants are represented by Novack and Macey LLP.

**B.      Communications With MB Investments.**

MB Investments LLC ("MB Investments") is the Bucksbaum Family Office (Scanlan is a member of the Bucksbaum family). MB Investments is not a party to this litigation. MB Investments performs multiple tasks for members of the Bucksbaum family, including Scanlan, such as tax services, financial planning and management, and accounting. MB Investments also provides similar services for General Trust. Pursuant to a written Administrative Services Agreement, MB Investments is an agent of General Trust. MB Investments is represented by David C. Craig of the Finley Alt Smith law firm in Des Moines, Iowa.

Michael Greaves ("Greaves") holds positions with both MB Investments and General Trust. At MB Investments, Greaves holds the positions of General Counsel, Managing Director, and Chief Operating Officer. At General Trust, Greaves is a non-employee officer and director.

Upon Scanlan's retention of Schiff Hardin in late 2008 to advise her on her personal assets, Scanlan requested that Greaves meet and cooperate with her Schiff Hardin counsel to provide background information on her assets and any other necessary information. Over the course of several months in late 2008 and early 2009, Grossberg collected information

3

from Greaves and other MB Investments employees regarding Scanlan's assets and trusts. In addition, MB Investments regularly sent copies of Scanlan's quarterly trust reports to Schiff Hardin. *See* Pl.'s Resp. at Exs. 4, 6.[1]

**C.     Sidley Austin Complains to Schiff Hardin.**

Scanlan's counsel learned that General Trust was represented in connection with this litigation on May 12, 2009. On June 21, 2010, General Trust's counsel sent a letter to Grossberg stating that it had come to their attention that Grossberg had engaged in conversations with "certain employees of MB Investments relating to investments made for certain trusts of which [Grossberg's client] Mary Bucksbaum Scanlan is a beneficiary...and that are the subject of your client's pending lawsuit against General Trust Company." Def.'s Br.[2] Ex. A-1.

Just three days later, on June 24, 2010, Grossberg responded via letter and stated: 1) it was his understanding that MB Investments was not a represented party; 2) it was his understanding that MB Investments is a separate entity from General Trust; and 3) that the communications were separate from the litigation and it was necessary for him to talk to Greaves and other employees of MB Investments so that he could adequately advise Scanlan. *Id.* Ex. A-2. In that letter, Grossberg stated that the communications were with regard to

---

[1]"Pl.'s Resp. at __" refers to Plaintiff's Memorandum in Opposition To General Trust Company's Motion to Compel. [Dkt. 299].

[2]Def.'s Br. at __" refers to General Trust Company's Memorandum in Support of Its Motion to Compel Production of Documents Or, Alternatively, For *In Camera* Review. [Dkt. 285].

current investment and expenditure activity and that such course-of-business communications were separate from the subject of the litigation. *Id.* Grossberg made clear that he would continue to communicate with MB Investments and invited General Trust's counsel to contact him if there were continuing questions. *Id.* They did not do so and that was the extent of communication between the attorneys on this topic in 2010 and 2011.

During the course of discovery in late 2011 or early 2012, it came to the attention of General Trust's counsel that Grossberg had continued to communicate with Greaves. General Trust believes those communications to be about historical subjects at issue in the litigation rather than limited to the course-of-business topics Grossberg described in his June 24, 2010 letter. Between February 13, 2012 and May 3, 2012, counsel for General Trust and counsel for Scanlan engaged in a series of communications regarding General Trust's concerns. On April 19, 2012, Scanlan's counsel produced all previously not-produced written communication between Grossberg and Greaves after May 12, 2009.

## D.    The Motion to Compel.

General Trust argues that Grossberg violated ABA Model Rule of Professional Conduct 4.2, as well as the Illinois Supreme Court Rule of Professional Conduct 4.2. General Trust asks this Court to order Scanlan's counsel to produce all written communications from within Plaintiff's counsel's firm or between that firm and any third party relating to the communication between Grossberg and Greaves after May 12, 2009, as

well as Grossberg's notes of oral conversations he had with Greaves.[3]  General Trust seeks

these documents so that it can assess the full extent of Plaintiff's counsel's violation of the

anti-contact rule and any resulting prejudice.

## II.  LEGAL STANDARDS

"Contacts between lawyers and 'represented parties' raise some of the thornier issues

in the area of legal ethics."  *Weibrecht v. S. Ill. Transfer, Inc.*, 241 F.3d 875, 875 (7th Cir.

2001).  ABA Model Rule of Professional Conduct 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of
> the representation with a person the lawyer knows to be represented by another
> lawyer in the matter, unless the lawyer has the consent of the other lawyer or
> is authorized to do so by law or a court order.

*ABA Model Rules of Prof'l Conduct R. 4.2* (2012); *N.D. Ill. Local Rule 83.50*[4] (adopting the

Model Rules adopted by the American Bar Association); *Ill. Sup. Ct. Rules Prof'l Conduct

4.2* (2010) (collectively "the anti-contact rule").

The purpose of the anti-contact rule is "to protect the represented person against

overreaching by adverse counsel, safeguard the client-lawyer relationship from interference

---

[3]Plaintiff's counsel states that there are no written communications with a third party.
According to General Trust's counsel, Greaves does not have notes reflecting the substance of
these communications with Grossberg and Greaves has only a minimal recollection of his
communications with Grossberg between May 13 and September 2, 2009, which is why General
Trust argues Grossberg's written notes should be produced.  Def.'s Br. at p. 6 and n.8.

[4]Prior to Local Rule 83.50, which became effective on June 2, 2011, Local Rule 83.54.2
provided:  "During the course of representing a client a lawyer shall not communicate or cause
another to communicate on the subject of the representation with a party the lawyer knows to be
represented by another lawyer in that matter unless the first lawyer has obtained the prior
consent of the lawyer representing such other party or as may otherwise be authorized by law."

by adverse counsel, and reduce the likelihood that clients will disclose privileged or other information that might harm their interests." *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1009 (N.D. Ill. 2003). The rule does not apply, however, where the communication with a represented person concerns matters outside the litigation. *ABA Model Rules of Prof'l Conduct 4.2* cmt. 4. Conduct constituting a violation of the anti-contact rule can consist of even the most minimal contacts. *See, e.g.*, *Weibrecth v. S. Ill. Transfer, Inc.*, 241 F.3d 875, 883 (7th Cir. 2001) (finding a violation of the anti-contact rule where plaintiff's lawyer contacted a represented person about the time of a scheduled deposition).

A lawyer may not turn a blind eye to circumstances that make it clear that a person with whom a lawyer wishes to speak is a represented party. *Parker*, 249 F. Supp. 2d at 1009-10. A represented person may not waive the anti-contact rule and consent to communication outside of the presence of retained counsel, making it irrelevant that a represented person initiates the communication. *Id.* at 1010.

Regarding representatives of a corporation, Comment 7 to the ABA Model Rules of Professional Conduct provides that Rule 4.2 prohibits communication with a constituent of the party organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or who has authority to obligation the organization. *ABA Model Rules Prof'l Conduct 4.2* cmt. 7. ABA Formal Opinion 06-443 clarifies that Rule 4.2 generally does not prohibit a lawyer from communicating with an opposing organization's inside counsel about the subject of the representation without obtaining the prior consent of

the entity's outside counsel.  ABA Comm, on Ethics & Prof'l Resp., Formal Op. 06-443.

While the current motion is brought pursuant to Fed. R. Civ. P. 37, courts have wide discretion to enforce the anti-contact rule and grant necessary relief.  *Parker*, 249 F. Supp. 2d 1011.  It is within this discretion that General Trust asks the Court to compel production of the sought documents.

### III.  DISCUSSION

Three sets of communication give rise to General Trust's motion: 1) a May 4, 2009 email in which Grossberg asked Greaves for information on behalf of the Schiff Hardin attorney leading the litigation team; 2) a series of emails in August 2009 in which Grossberg forwarded emails from Greaves to Schiff Hardin attorneys representing Scanlan in this litigation; and 3) oral communication between Greaves and Grossberg about which Greaves does not recall specific details**.**  The May 4, 2009 email took place before Schiff Hardin knew General Trust was a represented party, so it clearly does not implicate Rule 4.2.  Regarding written and oral communications after May 12, 2009, the Court finds that MB Investments was not a represented party, Greaves acted in his MB Investments role at all relevant times, and General Trust has suffered no prejudice from any of the communications about which they complain.

A.     **All Communication Between Grossberg and MB Investments Employees, Including Greaves, was Permissible.**

1.     **Communication between Grossberg and Greaves in his MB Investments Capacity Did Not Violate the Anti-Contact Rule Because MB Investments**

**Was Not A Represented Party.**

When Grossberg was retained by Scanlan, he and Greaves, at Scanlan's direction, communicated so that Grossberg would be in a position to adequately advise Scanlan on her finances. Indeed, General Trust's counsel does not argue that Grossberg and Greaves were not allowed to communicate at all: they acknowledge, by admittedly relying on Grossberg's June 2010 letter, that there were appropriate matters for Grossberg and Greaves to discuss. General Trust argues that some of the conversations touched on subjects at issue in the litigation and it is those communications that are problematic.

Similarly, Scanlan does not argue against the proposition that, as officer and director of General Trust, Greaves had the ability to bind General Trust and therefore falls within the scope of the anti-contact rule. *See Air Crash Disaster*, 909 F. Supp. at 1122. Scanlan's counsel does not argue that communication with Greaves in his General Trust capacity would have been allowed or that they were unaware of his roles with General Trust.

Grossberg had every right to be in contact with MB Investments and Greaves in his MB Investments capacity. MB Investments was not a represented party in this litigation. *See, e.g.*, *Illinois v. Santiago*, 925 N.E.2d 1122, 1129 (Ill. 2010) (finding no violation of Rule 4.2 where a state's attorney questioned a defendant in a criminal child abuse matter while the defendant was represented in a juvenile court case regarding the same set of facts). In *Santiago*, the Court found that Rule 4.2 was case specific rather than fact specific. *Id.* In the case at bar, while MB Investments may have knowledge of facts at issue in the litigation, MB Investments has never been a party to that litigation and was not represented until 2012.

Even if MB Investments was an agent of General Trust, and therefore a represented party in this case as of May 12, 2009, Greaves served as General Counsel[5] of MB Investments which makes communication with him permissible. ABA Comm. on Ethics & Prof'l Resp., Formal Op. 06-443. Greaves served as General Counsel for MB Investments for all relevant time periods.

Additionally, MB Investments retained its own, separate legal counsel and on February 24, 2012 that attorney sent a letter to Scanlan's attorneys and General Trust's attorneys indicating that all future communication with Greaves involving his status as an employee of MB Investments should go through counsel for MB Investments. Pl.'s Br. Ex. 7. On February 24, 2012, the same attorney confirmed that Grossberg and other Schiff Hardin attorneys could continue to communicate directly with employees of MB Investments regarding Scanlan's trust reports and related materials. *Id.* Ex. A-8. This letter made clear that, from the perspective of MB Investments, there were expected, ordinary communications between Grossberg and MB Investments that would not relate to the subject matter of the litigation. *Id.*

**2.      All Relevant Communication Involved Greaves in his MB Investments Capacity.**

The fact that Grossberg communicated with Greaves and other employees of MB

_____

[5]General Trust argues that the title "General Counsel" did not mean what it purports to mean in this conversation. The Court is not convinced. Regardless of Greaves's duties or the extent of his use of his legal training, the fact that he is General Counsel of MB Investments is significant in allowing the communications to take place.

Investments in order to adequately advise Scanlan regarding her investments and the expenditures of her Trusts is undeniably permissible—and even professionally required. Scanlan instructed Greaves, as her contact at MB Investments which served as her family's office, to share relevant information with Schiff Hardin. All information shared with Grossberg was done pursuant to this request.

Greaves, in his responses, never stepped out of his MB Investments role. All communication with MB Investments was pursuant to directions that Scanlan gave to the staff of her family office. All of Grossberg's written communications with Greaves were through his MB Investments email address or on MB Investments stationary. *See, e.g.,* Pl.'s Resp. at Ex. 6. Greaves regularly referred to the "Chicago office" meaning MBI Investments. Grossberg's questions were regularly addressed to Greaves who would refer him to other MB Investments employees (and never to General Trust representatives). Grossberg reasonably understood, and in fact communicated to General Trust's counsel without opposition, that it was appropriate for him to speak with employees of MB Investments, including Greaves in his MB Investments capacity. General Trust has not pointed to any information that Greaves disclosed outside of his MB Investments role.

Obtaining information, including historical information necessary to bring Grossberg up to date on Scanlan's assets and Trusts, was permissible. During all relevant communication, Greaves acted solely in his MB Investments capacity. No attorney from Schiff Hardin, including Grossberg, ever spoke with Greaves in anything other than his MB Investments capacity.

**B.    General Trust Has Not Claimed Or Suffered Prejudice.**

Even if these communications were found to be in violation of Rule 4.2, General Trust has not suffered prejudice. General Trust admits that, at this point, they cannot point to any prejudice caused and argue that obtaining the privileged documents would allow them to assess prejudice. The Court has reviewed all relevant documents *in camera* and finds that no confidential or prejudicial information has been shared. Further, Schiff Hardin has voluntarily turned over all written communications between Grossberg and Greaves in an attempt to alleviate General Trust's concerns. Those documents do not reveal any prejudice.

Notes regarding oral communications between Grossberg and Greaves, as well as internal written communications, were part of the Court's *in camera* review. The Court's review of the public filings, sealed filings, and documents submitted for *in camera* review confirms that General Trust has not suffered any prejudice, nor could they, as the Court finds all communications to be permissible.

## IV.  CONCLUSION

**For the reasons set forth in this opinion, General Trust's Motion to Compel Production of Documents Or, Alternatively, for *In Camera* Review, is granted in part and denied in part. [Dkt.283]. The motion is granted with respect to the motion for *in camera* review; Plaintiff's counsel has complied. The motion to compel production of documents to General Trust is denied.**

SO ORDERED THIS 19th DAY OF SEPTEMBER, 2012.

Morton Denlow

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**


Frederick J. Sperling
Paul E. Greenwalt, III
Lawrence H. Heftman
Ann H. MacDonald
Schiff Hardin LLP
233 South Wacker Drive
Suite 6600
Chicago, Illinois 60606

**Counsel for Plaintiffs**

Holly A. Harrison
Rachel B. Niewoehner
Frank J. Favia, Jr.
Sidley Austin, LLP
One South Dearborn Street
Chicago, Illinois 60603

**Counsel for Defendant General Trust**

Stephen Novack
Donald A. Tarkington
Kristen Werries Collier
Christopher Graham Dean
Joshua Edward Liebman
Novack & Macey
100 North Riverside Plaza
Suite 1500
Chicago, IL 60606

**Counsel for Defendants Earl**
**Melamed, Marshall Eisenberg , and**
**Neal, Gerber & Eisenberg, LLP**

13