## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARY BUCKSBAUM SCANLAN,            )
individually, as Next Friend       )
for MARTIN MICHAEL SCANLAN and     )
STELLA CLARE SCANLAN, minors,      )
and derivatively on behalf of      )
GENERAL TRUST COMPANY, as Trustee, )
                                   )
            Plaintiffs,            )
                                   )
        v.                         )    No. 09 C 5026
                                   )
MARSHALL EISENBERG, EARL MELAMED,  )
NEAL, GERBER & EISENBERG, LLP,     )
an Illinois limited liability      )
partnership, and GENERAL TRUST     )
COMPANY, a South Dakota            )
corporation,                       )
                                   )
            Defendants.            )

### MEMORANDUM OPINION

Before the court is the motion of defendants Marshall Eisenberg, Earl Melamed, and Neal, Gerber & Eisenberg LLP (collectively, the "lawyer defendants") to dismiss Counts I, II, and III of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Mary Bucksbaum Scanlan ("Scanlan") is the primary beneficiary of several discretionary trusts (the "Trusts") that were established by her father and uncle, who were the founders of General Growth Properties ("General Growth"), one of the largest

- 2 -

publicly-traded real estate investment trusts in the United States. Scanlan's children, Martin and Stella Scanlan, who are also plaintiffs, are contingent remaindermen of the Trusts. Each of the Trusts authorizes the corporate trustee, defendant General Trust Company (the "Trustee" or "GTC"), to distribute to Scanlan all or as much of the trust's net income or principal as the Trustee deems necessary for her support or in her best interests.

It is alleged that defendant Neal, Gerber & Eisenberg (the "Law Firm"), primarily through two of its partners, defendants Marshall Eisenberg and Earl Melamed, generally represented Scanlan throughout her adult life "for every matter in which she needed legal advice." (Am. Compl. ¶ 38.) At the same time, they represented the Trustee; General Growth; other Bucksbaum family members, some of whom managed General Growth; and the investment vehicles for the Trusts and the trusts of other Bucksbaum family members. Eisenberg and Melamed both own substantial amounts of General Growth stock. They also personally control the Trustee; Eisenberg is its majority owner, and both serve on its Board of Directors.

In 2007 and 2008, the price of General Growth stock fell dramatically. The plaintiffs allege that despite this fact, and without Mary's knowledge, the defendants caused the Trusts to purchase (with the proceeds of the "Citi Loan," a loan secured by a pledge of the Trusts' assets) more than $300 million in

- 3 -

additional shares of the stock and explained that the purchases were an effort to stabilize the stock's value in accordance with what the Trustee deemed to be in the best interest of the "Bucksbaum Family" as a whole. It is also alleged that without Mary's knowledge, the defendants "caused assets owned by Mary's Trusts to be used to make personal unsecured loans totaling at least $90 million to two officers of General Growth for the purpose of allowing those officers to meet margin calls associated with their holdings of General Growth stock." (Am. Compl. ¶ 16.)

The plaintiffs complain that these transactions were not made in their best interests, but to further the interests of others such as the lawyer defendants and other members of the Bucksbaum family. The eight-count amended complaint contains different permutations of claims for legal malpractice, breach of fiduciary duty, and aiding and abetting the breach. It also seeks removal of the Trustee.

The lawyer defendants move to dismiss Counts I and II, which are the claims of Scanlan alone against the lawyer defendants alone for legal malpractice and breach of fiduciary duty. We will discuss those two counts below. They also move to dismiss Count III, a legal malpractice claim asserted by all three plaintiffs as third-party beneficiaries of the lawyer defendants' attorney-client relationship with the Trustee. We have already dismissed Count III with prejudice as to Scanlan's children's claims. <u>Scanlan v.</u>

- 4 -

<u>Eisenberg</u>, No. 09 C 5026, 2011 WL 862748, at *5 (N.D. Ill. Mar. 9, 2011). The lawyer defendants contend that our basis for dismissing the children's claims applies equally to Scanlan's claim, and Scanlan states in her response that she does not contest the dismissal of Count III. (Pl.'s Resp. at 17 n.6.) Therefore, Count III will be dismissed with prejudice in its entirety.

### DISCUSSION

In Count I of the amended complaint, Scanlan alleges that she had an attorney-client relationship with the lawyer defendants and that the lawyer defendants committed legal malpractice by breaching their duties to her in several ways. In Count II, which is also based on this alleged attorney-client relationship, Scanlan alleges that the lawyer defendants breached their fiduciary duties to her. The lawyer defendants argue that Counts I and II do not sufficiently allege an attorney-client relationship. They also contend that Count II must be dismissed because it is duplicative of Count I.

### A. Do Counts I and II Sufficiently Allege an Attorney-Client Relationship?

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004). Under federal notice-pleading standards, a complaint must offer more than just "labels and conclusions" but need not contain "detailed factual

- 5 -

allegations." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555
(2007).  To survive a motion to dismiss, "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556
U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  "A claim
has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S.
at 678.

The Court of Appeals for the Seventh Circuit has observed that
"[p]leading standards in federal litigation are in ferment after
<u>Twombly</u> and <u>Iqbal</u>," <u>In re Text Messaging Antitrust Litigation</u>, 630
F.3d 622, 627 (7th Cir. 2010), and has issued additional guidance
to the district courts.  It has emphasized that <u>Twombly</u> and <u>Iqbal</u>
"do not change" the fact that "[o]ur system operates on a notice
pleading standard." <u>Bissessur v. Ind. Univ. Bd. of Trs.</u>, 581 F.3d
599, 603 (7th Cir. 2009).  The Court has also addressed the
"plausibility" standard as follows:

> The Court said in <u>Iqbal</u> that the "plausibility standard
> is not akin to a 'probability requirement,' but it asks
> for more than a sheer possibility that a defendant has
> acted unlawfully."  This is a little unclear because
> plausibility, probability, and possibility overlap.
> Probability runs the gamut from a zero likelihood to a
> certainty.  What is impossible has a zero likelihood of
> occurring and what is plausible has a moderately high
> likelihood of occurring.  The fact that the allegations
> undergirding a claim could be true is no longer enough to
> save a complaint from being dismissed; the complaint must
> establish a nonnegligible probability that the claim is

- 6 -

valid; but the probability need not be as great as such terms as "preponderance of the evidence" connote.

Text Messaging, 630 F.3d at 629 (citation omitted). Furthermore, in Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010), the Seventh Circuit articulated the standard in a helpful way, stating: "[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen. For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." "The required level of factual specificity rises with the complexity of the claim." McCauley v. City of Chicago, 671 F.3d 611, 616-17 (7th Cir. 2011).

The defendants argue that the amended complaint fails to allege that the scope of their representation of Scanlan included the advice they allegedly failed to give, and they note, correctly, that representation on particular matters does not create an attorney-client relationship with respect to other matters. In the lawyer defendants' view, "Scanlan must allege that the Lawyer Defendants were lawyers for her as trust beneficiary for the purpose of representing her against GTC by monitoring GTC's investment activities (and monitoring their own role in directing those investments as GTC officers/directors) and reporting to her if those activities were in breach of GTC's (or their own)

fiduciary duties." (Defs.' Mem. at 2.) They assert that Counts I and II fail to sufficiently allege either an oral contract or an implied-in-fact contract between them and Scanlan. They also assert that it is "implausible" that they would have represented Scanlan "generally" for every matter in which she needed legal advice, as is alleged in the amended complaint, and that the work Scanlan alleges they performed was "plainly unrelated" to the Trusts. (Defs.' Mem. at 7-9.)

Scanlan responds that she and the lawyer defendants had not an express, but an implied-in-fact contract for the lawyers to act as her general counsel, which included advising her regarding her interests as beneficiary of the Trusts. She asserts that she has pled many specific facts regarding her interactions with the lawyer defendants over a period of many years, including numerous instances in which they actually provided advice regarding her interests in the Trusts. She also contends that the lawyer defendants improperly attempt to refute the allegations of the complaint and ask the court to draw inferences in defendants' favor under the guise of making a plausibility assessment.

The elements of a legal malpractice claim in Illinois are (1) the attorney's breach (2) of a duty owed to the plaintiff that arose from the attorney-client relationship (3) that proximately causes (4) damages. Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd, 767 N.E.2d 470, 474 (Ill. App. Ct. 2002). The elements of

- 8 -

a claim for breach of fiduciary duty are largely the same.  Chicago City Bank & Trust Co. v. Lesman, 542 N.E.2d 824, 826 (Ill. App. Ct. 1989).  The attorney-client relationship alleged by Scanlan is predicated on a theory of an implied-in-fact contract, "one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound."  Kohlenbrener v. N. Suburban Clinic, Ltd., 826 N.E.2d 563, 567 (Ill. App. Ct. 2005).  "An implied-in-fact contract may be found by examination of the acts of the parties even in the absence of any express statement of specific agreement regarding the details of the contractual relationship."  Id.; see also O'Neil & Santa Claus, Ltd. v. Xtra Value Imps., Inc., 365 N.E.2d 316, 319 (Ill. App. Ct. 1977) (stating that the essential terms of an implied-in-fact contract are supplied by implication from the parties' conduct).

The case law cited by the parties does not assist with our analysis.  This is not the parties' fault; there appears to be a dearth of authority involving allegations of a comparable long-standing and wide-ranging attorney-client relationship.  Moreover, we are mindful that "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

- 9 -

We have reviewed Counts I and II of the amended complaint and considered whether plaintiff provides enough details about the alleged legal malpractice and breaches of fiduciary duty to present a story that "holds together" and establishes a "nonnegligible probability" that the claims are valid. See Swanson, 614 F.3d at 404; Text Messaging, 630 F.3d at 629. We believe that plaintiff has done so. The amended complaint alleges in paragraph 38 that throughout Scanlan's adult life and until 2009, the lawyer defendants "continually acted as [her] personal counsel for every matter in which she needed legal advice" and that the Law Firm represented her "in a variety of contexts, including matters related to her Trusts," and it lists some of those matters. It alleges in the same paragraph that Scanlan "reasonably believed" that the lawyer defendants "were her attorneys for all of her legal needs, including in her capacity as beneficiary of her Trusts." Paragraphs 39 through 44 and 47 through 55 contain examples of matters as to which the lawyer defendants allegedly represented Scanlan, beginning in 1989 and extending through 2009. Paragraphs 40 through 44, 47 through 50, and 52 through 55 specifically describe the lawyer defendants' advice to Scanlan regarding the Trusts that are at issue, including advice about her disposition of assets in the Trusts and specifically regarding the General Growth stock holdings in the Trusts. Scanlan also alleges that the lawyers initiated contact with her regarding her interests in the

Trusts and that they never addressed the Law Firm's conflicts of interest, limited their representation of her, or told her that they could not represent her in matters relating to the Trusts. (Am. Compl. ¶¶ 56-57.)  These details permit a reasonable inference that the scope of Scanlan's relationship with the lawyer defendants included advice regarding her interests in the Trusts.  Plaintiff does not allege the ordinary attorney-client relationship that is confined to one particular matter, but, contrary to defendants' argument, her story is not "implausible" simply because she alleges a broad relationship and egregious conflicts of interest. Defendants' contentions stray too far into the merits of plaintiff's case.

To bolster her response to defendants' motion, plaintiff has attached several exhibits to her brief.  She asserts that they demonstrate the plausibility of her allegations of an expansive attorney-client relationship that included the matter of her interests in the Trusts.  We agree.  For example, Exhibit F is a "personal and confidential" 2002 letter from Eisenberg to Scanlan that includes advice regarding the exercise of Scanlan's power of appointment for one of the Trusts.  The lawyer defendants characterize Scanlan's use of these exhibits as an inappropriate attempt to cure a "deficient complaint" by "fill[ing] in missing allegations."  (Defs.' Reply at 5-6.)  As we have explained above, the complaint is not deficient.  Moreover, the Seventh Circuit has

stated that a party opposing a Rule 12(b)(6) motion is allowed to submit materials outside the pleadings to illustrate the facts the party expects to be able to prove, without converting the motion into one for summary judgment, and indeed "may find it prudent to do so" "[i]n the turmoil concerning civil pleading standards stirred up by" Twombly and Iqbal. Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

The lawyer defendants' motion will be denied as to Count I of the amended complaint.

## B.    Is Count II Duplicative of Count I?

The defendants maintain that Count II, which alleges breach of fiduciary duty, should be dismissed as duplicative of Count I because it is based on the same facts and same injury. Under Illinois law, every alleged act of malpractice does not rise to the level of a breach of fiduciary duty, but when "a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, and results in the same injury, the later claim should be dismissed as duplicative." Fabricare, 767 N.E.2d at 476; see also Hoagland v. Sandberg, Phoenix & Von Gontard, P.C., 385 F.3d 737, 744 (7th Cir. 2004).

A close reading of Counts I and II reveals that they are premised on different conduct. Count I is based on the defendants allegedly continuing to represent Scanlan after becoming unable to render independent legal advice; failing to advise her to retain

independent legal counsel; failing to withdraw from representing her due to their conflicts of interest; failing to disclose to her the existence and terms of the Citi Loan and advise her of the risks associated with the purchase of additional shares of General Growth stock for the benefit of the Trusts; failing to disclose to her the existence and terms of the Freibaum and Michaels Loans and advise of the risks those loans posed to the Trusts' assets; and facilitating the use of non-General Growth assets from the Trusts to make those loans. (Am. Compl. ¶¶ 113-116.) Count II, however, is based on the defendants allegedly assisting the Trustee with the purchase of additional shares of General Growth utilizing the Citi Loan and in extending the Freibaum and Michaels Loans; approving the stock purchases; and approving the Freibaum and Michaels Loans. (Am. Compl. ¶¶ 126-128.) Because the operative facts of Count II are distinct from those of Count I, the motion to dismiss will be denied as to Count II.

## CONCLUSION

The lawyer defendants' motion to dismiss Counts I-III of the amended complaint [251] is granted in part and denied in part. The motion is denied as to Counts I and II. The motion is granted as to Count III, which is dismissed with prejudice in its entirety.

General Trust Company's motion to set a deadline for an amended answer [249] is granted. All defendants may file amended answers by December 6, 2012.

- 13 -

DATE:     November 15, 2012


ENTER:    _____

          John F. Grady, United States District Judge